WALTERS et al. v. WESTERN & A. R. CO. (McLENDON, Intervener).

(Circuit Court, N. D. Georgia. June 28, 1895.)

1. CORPORATIONS—DISSOLUTION—ABATEMENT OF SUITS.

The dissolution of a corporation, pending garnishment proceedings against it, and before the adjudication of any liability, abates such proceedings; and the plaintiff therein acquires no right, by virtue of such proceedings, to share in the distribution of the assets of the corporation.

2. CONTRACTS—PARTIES—RIGHTS OF SUBCONTRACTORS.

One P. was appointed to a clerical position by the W. R. Co. He asked to have the appointment transferred to one B. The railway company declined to consent to such transfer, but permitted P. to fill the office by deputy, and B. accordingly performed the duties, and sometimes drew the salary, which appeared on the pay roll in P.'s name. P. afterwards resigned, and B. continued for one month to perform the duties, his own name appearing on the pay roll. At the end of the month P. was reappointed, and the original arrangement resumed. *Held,* that there was no liability of the railway company to B., except for the month during which P. did not hold the appointment.

This was a suit by William T. Walters and others against the Western & Atlantic Railroad Company. J. S. McLendon filed an intervening petition, asking the allowance of a claim against the assets of the corporation, which petition was referred to a special master.

Julius L. Brown and Thos. L. Bishop, for intervener.

Payne & Tye, for defendant Western & A. R. Co.

NEWMAN, District Judge. This case is heard on exceptions to the special master's report, which states the facts and issues in the case as follows:

### Special Master's Report.

To the Hon. William T. Newman, Judge of the United States Circuit Court for the Northern District of Georgia:

The subscriber, having been appointed by the honorable court special master to hear the evidence in said case, and to determine the liability therefrom, having heard and considered the evidence in said case and the arguments of counsel, reports as follows:

It appears from the evidence that a judgment was rendered against one Perino Brown on March 27, 1884, in the superior court of Fulton county, for $1,916.66 principal, $368.94 interest, with interest from the judgment at 7 per cent. per annum, on which there was a return of nulla bona. Garnishment issued upon the judgment, and was served upon the Western & Atlantic Railroad Company, which answered an indebtedness of $80 to defendant in judgment. This answer was traversed by the plaintiff in judgment, and, upon the trial of the traverse before a jury, a verdict was rendered against the traverse. A motion for a new trial was made, and the verdict set aside, and a new trial granted; but before new trial was had the bill in this case was filed. The judgment above referred to was assigned to J. S. McLendon on January 7, 1888, and was alive at the date of the proceedings upon the garnishment, and is still alive. There were two garnishments,—the first was sued out January 28, 1888, and served January 31, 1888; the other was sued out on the 8th of November, 1888, and served the same day. The joint answer to the two garnishments was filed April 27, 1889, and was traversed upon the same day by the plaintiffs. The trial above referred to was upon the first garnishment sued out.

W. H. Patterson was appointed to a clerical position in the depot of the Western & Atlantic Railroad Company at Chattanooga in the year 1881 or

1882, at a salary of $75 or $80 per month. Subsequent to the appointment, Mr. Patterson went to Gov. Brown, through whom the appointment was made, and endeavored to make an arrangement by which he (Patterson) could resign, and have his father-in-law, Mr. Perino Brown, appointed to the position. Gov. Brown declined to consent to this arrangement, but stated that the company would have no objection to continuing Mr. Patterson's appointment and allowing Mr. Patterson to fill the duties of the office by a competent and satisfactory deputy. This suggestion was adopted, and Mr. Perino Brown personally performed the duties of the office to which Mr. Patterson had been appointed. It seems clear to me that this arrangement was made in good faith and was not the outcome of fraud or substitute. Some time subsequent to the consummation of this arrangement, Mr. Patterson resigned his situation, and Mr. Perino Brown seems to have assumed the position on his own account. But, after one month Mr. Patterson was reappointed to the same position, and Mr. Brown again assumed the position as deputy of Mr. Patterson. During this one month Mr. Perino Brown's name appeared on the pay roll of the defendant company, and an indebtedness appeared to him on said pay roll of $80, opposite which amount was marked the word "garnisheed." During the remainder of the time covered by the controversy, both before and after the month just mentioned, the pay roll showed no indebtedness to Mr. Brown, but a salary appeared each month due W. H. Patterson. This salary was drawn sometimes by Mr. Patterson, and sometimes by Mr. Brown in Mr. Patterson's name, in accordance with an arrangement agreed upon between them.

After a careful examination of all the evidence in this case, and diligent search of the law controlling it, I am of the opinion that there is no liability on the part of the Western & Atlantic Railroad Company, for two reasons: (1) Upon the expiration of the charter of the Western & Atlantic Railroad Company, the suit pending at the time abated, and no legal judgment could be rendered upon that suit against the funds in the hands of the receiver. The equitable bill on which we are proceeding is for the distribution of the fund which existed upon the expiration of the corporation's charter. McLendon has no claim against this fund, and cannot participate in its distribution. His cross bill, therefore, under his allegations, cannot be sustained.   (2) But, were this not the case, my finding is that the Western & Atlantic Railroad Company would not be indebted to the plaintiff upon the traverse to the answer of the garnishment. Mr. Brown, from the evidence, occupies the position of subcontractor, appointed by and deriving all his rights from Mr. Patterson. Mr. Patterson was the only party to the contract with the railroad company. They looked to him alone for a proper discharge of the functions of the office, and hold him alone responsible for the discharge of its duties. I see no reason for differentiating this case from any other case of contractor and subcontractor. If A contracts with B to build B's house, and sublets the work, or part of it, to C, and the payments under the contract with R are made at stated intervals to A, a garnishment served upon B against funds due C would not justify B in witholding the contract payments due to A; and that is precisely the case made by the evidence before us. I therefore find that the defendant, the Western & Atlantic Railroad Company, is not indebted to J. S. McLendon in any sum.

This January 31, 1895.        Albert Howell, Jr., Special Master.

The exceptions are to the correctness of the report on both grounds on which the decision is placed by the special master.

The first question made by the exceptions and the argument of the case is as to the effect of the dissolution of the corporation on the rights of McLendon against it as garnishee.   Whatever rights McLendon was to have as against the Western & Atlantic Railroad Company were to be reached by his succeeding in his traverse to the company's answer to the garnishment.   McLendon had no debt against the Western & Atlantic Railroad Company, except such as the court in the garnishment proceeding might have ad-

judged in his favor, provided it appeared that the company had not paid over money pending the garnishment which it ought not to have paid. This suit fell with the dissolution of the corporation, or, at least, when the Martin act, which was passed to uphold these suits, was declared unconstitutional by the supreme court of the state. Did he not thereby lose all rights he had acquired simply by virtue of his proceeding at law, there being no indebtedness originally as between the company and McLendon? Did not any right he might have had by virtue of that garnishment proceeding depend upon maintaining it and concluding it before the dissolution of the corporation, and before the assets went into a court of equity for distribution among the shareholders and creditors? Now, has McLendon any right, by virtue of his garnishment proceeding, to claim any equitable right as against these assets in the hands of the court for distribution? There appears to have been one trial on the traverse of the answer to the garnishment, and a verdict in favor of the company, which was set aside by the presiding judge. On what ground it was set aside we are not informed. There is no question about the contention of counsel for McLendon in this case that the debts of the creditors of a corporation, as well as claims for wrongs done by the corporation, are not lost by its dissolution, but may be enforced by proper proceeding as against the assets. The shareholders of a corporation will not be allowed to take its assets as against just debts incurred, or liabilities for torts committed by the corporation, during its existence. That may be conceded without discussion. But is McLendon a creditor of the corporation, or has it done him any wrong, in this sense? That presents the question here. My opinion is that any rights McLendon had were by virtue of the garnishment proceeding, were dependent upon it, and were lost when it fell by dissolution of the corporation. The language used by the supreme court of Georgia in Coggin v. Railroad Co., 62 Ga. 685 (material language on pages 695, 696), may be given its full effect and yet not cover this case. If the company had been indebted to McLendon, or if there had been any liability on its part to him for tort, it would be applicable; but the facts here are peculiar, and that case cannot be held to apply to this case, and certainly not to control it. Suppose that this garnishment proceeding had been defective, and had been dismissed by the court on account of such defect,—an insufficient affidavit, for instance, as a basis for it,—the fact that the company had wrongfully paid over money, pending the same, between the time of the service of a summons and the time of answering, would not give the plaintiff any right, in a subsequent proceeding, to have claimed the amount so paid over, as against the company, as his rights were dependent upon maintaining that garnishment proceeding, by which and under which all his rights were acquired. There does not seem to be any difference between that case and one where the suit falls on account of the legal death of the corporation.

But, independently of the foregoing, I think the special master is right in the conclusion which he reached on the merits of this

matter. There is no reason why the company could not have contracted honestly and in good faith with Mr. Patterson for the discharge of the duties of the position which Mr. Brown filled. The special master, after considering the matter and all the evidence on the subject, has found that it was such a transaction. It appears very clearly that, as to the original employment, there was no effort whatever to evade any such matter as this garnishment, or to avoid the payment of debts. It seems very clear that Patterson was offered the appointment originally, and that he desired to give it to Mr. Brown; that the company refused to give it to Mr. Brown, but stated that, if Mr. Patterson thought proper, he might allow Mr. Brown to do the work. There is more doubt about the change back from Brown to Patterson, after Brown's name had appeared for one month on the pay roll of the company; but as to this also the special master finds against McLendon. It appears that the jury in the state court found the same way on a trial there, although the verdict was subsequently set aside. This is a doubtful matter, at most. The special master having heard this evidence, the examinations, cross-examinations, etc., I am not disposed to disturb his decision except in one particular. It appears that $80 was held by the company for the month during which Mr. Brown's name was on the pay roll of the company, and pending garnishment. This amount must have gone into the hands of the receivers, and I think McLendon may well interpose an equitable claim to that amount. An order may be taken directing the receiver to pay J. S. McLendon this amount, and, with this modification, the report of the special master is confirmed, and the exceptions overruled.